## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CONSERVATIVE BAPTIST | ) | CIVIL ACTION NO. 13-1762 |
| ASSOCIATION OF AMERICA, INC. | ) | |
| 3686 Stagecoach Road | ) | SECTION _____ |
| Suite F | ) | |
| Longmont, CO 80504-5660 | ) | JUDGE _____ |
|        Plaintiffs | ) | |
|        v. | ) | MAGISTRATE _____ |
| | ) | |
| ERIC SHINSEKI, in his official capacity as | ) | |
| SECRETARY OF VETERANS AFFAIRS | ) | |
| 810 Vermont Ave., Washington DC 20420 | ) | |
|        Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

Conservative Baptist Association of America Inc. files the following Complaint and in support avers as follows:

## PARTIES

1.

Conservative Baptist Association of America Inc., (hereinafter CBAmerica), is a non-profit corporation organized under the laws of Illinois who has been granted tax exempt status under § 501c(3) of the Internal Revenue Code.  Among CBAmerica's missions, the organization acts as endorsing agents for Chaplains.  Specifically, CBAmerica is the endorsing agent for Dan Klender and Steven Firtko, who are the focus of this complaint.

2.

Eric Shinseki is a natural person who is the Secretary of Veterans Affairs, a cabinet level position of the Executive Branch of the government of the United States of America.

## JURISDICTION AND VENUE

3.

The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 as a federal question, the Administrative Procedures Act, 5 U.S.C. § 702, the Religious Freedom Restoration Act, 42 U.S.C. § 2000-bb, and the First Amendment to the United States Constitution.

4.

Venue is proper pursuant to 28 U.S.C. § 1391(e).

## FACTUAL HISTORY

5.

CBAmerica Chaplains Major Steven Firtko (hereinafter Chaplain Firtko), U.S. Army (Retired) and Lieutenant Commander Dan Klender, U.S. Navy, (hereinafter "Chaplain Klender") entered the at the San Diego VA-DOD Clinical Pastoral Education (hereinafter CPE) Center program in August, 2012.

6.

At all material times Secretary Shinseki had ultimate supervisory authority over the San Diego VA-DOD CPE Center.

7.

At all material times, the San Diego VA-DOD CPE Center prepared, trained and distributed Chaplains to military and VA medical centers in the San Diego CA area.

8.

At all material times, the CPE training consisted of both classroom discussion and projects supervised by the Department of Veterans Affairs and actual work in the various military and VA health care facilities under the scope of the program.

9.

At all material times, the VA San Diego Health Care System, the Navy Medical Center San Diego and the Naval Hospital Camp Pendleton participated in the San Diego VA-DOD CPE Center's program.  These medical centers provided services to tens of thousands of active duty, reserve and retired military as well as qualified veterans.

10.

The  San Diego VA-DOD CPE Center was supervised by Ms. Nancy Dietsch, a Department of Veterans Affairs employee under the supervision of Shinseki.

11.

On various occasions, Ms. Dietsch stated during the classroom portion of the San Diego VA-DOD CPE Center, in the presence of  both Chaplains Firtko and Klender that they should not pray in Jesus' name.

12.

Ms. Dietsch stated  during the classroom portion of the San Diego VA-DOD CPE Center's program, in the presence of  both Chaplains Firtko and Klender that the VA in general and she in particular, do not allow Chaplains to pray "in Jesus' name" in public ceremonies.

13.

On or about September 24, 2012, during a class discussion regarding faith, Ms. Dietsch asked Chaplain Firtko what he "believed faith was."  Chaplain Firtko responded, "Oh, that's easy.   Faith is the substance of things hoped for, the evidence of things not seen."  Ms. Dietsch responded that Chaplain Firtko was not allowed to quote scripture in the classroom.

14.

On or about October 8, 2012, Ms. Dietsch informed the class she believes God could be a

man or woman.  Chaplain Firtko recited the Lord's Prayer, stating "Our Father who Art in Heaven."  In response, Ms. Dietsch angrily pounded her fist on the table and shouted:  "Do not quote Scripture in this class!"

15.

On or about October 22, 2012, during a classroom group discussion regarding evolution, Ms. Dietsch insisted that evolution was fact and that she believed mankind evolved.  Chaplain Firtko stated he believed in the Genesis statement that "[i]n the beginning, God created the Heavens and Earth".  In response, Ms. Dietsch pounded her fist on the table and ordered Chaplain Firtko to not quote Scripture in the classroom, stating "it made her feel like she had been pounded over the head with a sledge hammer."

16.

On or about December 3, 2012, Chaplain Klender was accused by Ms. Dietsch of "not giving a rat's ass about Marines or other patients."  This statement was made with the knowledge that Chaplain Klender had served with the Marine Corps as part of his duties as a Navy Chaplain and that he was or would be serving Marines or former Marines through this program.

17.

On or about December 5, 2012,  Ms. Dietsch stated in class in the presence of Chaplain Klender:  "I have refrained from failing students in the past because I didn't want to screw with people's careers but I am about ready to fail people now."

18.

On December 7, 2012, Chaplain Klender's superior informed him that Ms. Dietsch broke confidence with him by telling Chaplain Klender  that he (Chaplain Denton) had expressed doubts concerning Chaplain Klender's suitability for his next assignment.

19.

Chaplain Denton informed Chaplain Klender that Ms. Dietsch's statement was exaggerated.  He urged Chaplain Klender to challenge Ms. Dietsch for her bias against evangelicals.

20.

On or about December 10, 2012, during a group discussion of how one expects to get to heaven, Chaplain Firtko stated he believed the only path to heaven was "through faith in Jesus Christ our Lord."  Ms. Dietsch took no action to reprimand another class member who began harassing Chaplain Firtko for his beliefs, tacitly approving of the harassment.

21.

When Chaplain Klender responded to a question during a group discussion regarding the Sandy Hook school shooting in Newtown CT, by stating he would tell a parent whose child was a victim by stating that "there is evil in the world," Ms. Dietsch impugned his core faith beliefs stating they would not work in a clinical setting.  In the presence of the other students she said: "You don't actually believe that do you?"

22.

On January 14, 2013, Ms. Dietsch stated in class three times in the presence of both Chaplains Firtko and Klender: "There is no room in this program for those who believe they are right and everybody else is wrong."  The comments, upon information and belief, were directed at Chaplains Firtko and Klender.

23.

On or about January, 14, 2012, during a group discussion concerning salvation and heaven, Ms. Dietsch stated her belief that there are many ways to heaven and that one religion

cannot be right, while others are wrong.  Chaplain Firtko quoted scripture, stating that Jesus said "I am the way, the truth and the life.  No one comes to the Father but through Me."  Ms. Dietsch informed Chaplain Firtko again that he was not allowed to quote scripture and stated "If you believe your beliefs are right, and everyone else's is wrong, you do not belong in this program."

24.

On January 15, 2013, Chaplain Klender sent an e-mail to his endorsing agent (Rev. Allen Russell) complaining about Ms. Dietsch's attacks, harassment and the creation of an environment hostile to CBAmerica chaplains.

25.

On or about January 22, 2012, Ms. Dietsch initiated a discussion concerning homosexuality and homosexual marriage.  Chaplain Firtko began to read from his Bible.  Ms. Dietsch stated to Chaplain Firtko, "[I]t is disrespectful to read your Bible while someone is speaking."

26.

On or about February 4, 2013, Chaplain Firtko remained silent in class to prevent harassment of his beliefs.  Ms. Dietsch confronted Chaplain Firtko regarding his silence, and after Chaplain Firtko responded that he decided to hold his tongue because his words did not seem to be appreciated, Ms. Dietsch informed him that he would fail the CPE program if he did not contribute to class discussion.

27.

On February 5, 2013, Chaplain Klender was informed that a chaplain who filed a complaint against Ms. Dietsch was being dropped by his endorser.  Chaplain Klender telephoned his endorser to confirm the status of his endorsement and was informed by his endorser that his

endorsement was "rock solid."

28.

On or about February 8, 2013, Chaplain Firtko was called into Ms. Dietsch's office, where she threatened to dismiss Chaplain Firtko from the CPE program.  Ms. Dietsch then ordered a six week probation period.

29.

On or about February 8, 2013, Chaplain Klender yielded to the constant harassment, insults and persecution and withdrew from the program.  This withdrawal was a constructive discharge from the program brought about solely because of Ms. Dietsch's successful persecution of the CBAmerica Chaplains.

30.

Shortly thereafter, Chaplain Firtko received a letter dated February 15, 2013 from the Department of Veterans Affairs and signed by Ms. Dietsch, notifying him that he had been dismissed from the CPE program effective March 1, 2013, stating that the "probation period is not yielding the results we both desire."

31.

On July 19, 2013, Chaplain Firtko and CBAmerica filed a formal complaint against Nancy Dietsch, ACPE Supervisor, Department of Veterans Affairs, VA San Diego Healthcare System for religious discrimination and violation of the Association of Pastoral Continuing Education Standards 101.1, 101.2, 101.4 and 101.5.

32.

On July 19, 2013, Chaplain Klender and CBAmerica filed a formal complaint against Nancy Dietsch, ACPE Supervisor, Department of Veterans Affairs, VA San Diego Healthcare

System for religious discrimination and violation of the Association of Pastoral Continuing

Education Standards 101.1, 101.2, and 101.4.

**THE  SAN DIEGO VA-DOD CPE CENTER'S INTOLERANCE OF
MAINSTREAM JUDEO-CHRISTIAN RELIGIOUS BELIEFS AND EXCESSIVE
BURDENING OF CHAPLAIN FIRTKO AND CHAPLAIN KLENDER'S EXERCISE OF
THEIR MAINSTREAM BELIEFS VIOLATED THE RELIGIOUS FREEDOM
RESTORATION ACT**

33.

The Religious Freedom Restoration Act, (RFRA) 42 U.S.C. 2000-bb, prohibits the

government from substantially burdening a person's exercise of religion unless it is in

furtherance of a compelling governmental interest and is the least restrictive means of furthering

that compelling governmental interest.

34.

Nancy Dietsch's punitive actions against the CBAmerica Chaplains including the verbal

harassment and intolerance of their core religious beliefs during their participation in the CPE

program was a violation of RFRA.

35.

There was no compelling government interest in persecuting the CBAmerica Chaplains or

hounding them from the program.  To the extent that the governmental interest was in

establishing a secular humanist based religious free from any influence of Christian dogma,

biblical scripture and mainstream Judeo-Christian beliefs embraced by CBAmerica, the interest

was void under the Establishment Clause of the First Amendment tot he United States

Constitution.

36.

In the event that a compelling governmental interest is identified, a more narrowly tailored remedy than the harassment, persecution and dismissal tactics adopted by the Department was available to serve any compelling governmental interest.

37.

The CPE program's actions challenged in this complaint are subject to and will fail the strict judicial scrutiny required by RFRA.

**THE  SAN DIEGO VA-DOD CPE CENTER'S INTOLERANCE OF MAINSTREAM JUDEO-CHRISTIAN RELIGIOUS BELIEFS VIOLATES THE FREE EXERCISE CLAUSE**

38.

The free exercise of religious beliefs is an individual fundamental right.

39.

The free exercise of religious beliefs can only be limited in the face of a compelling governmental interest and a showing that the government action is narrowly tailored to promote that compelling interest in the least restrictive way.

40.

The prohibitions against quoting scripture, praying in Jesus' name and applying the tenets of mainstream Judeo-Christian beliefs to their roles as Chaplains limit the ability of CBAmerica Chaplains to practice their religion as defined by the tenets of their endorsing agency.

41.

The actions of the Secretary within the San Diego VA-DOD CPE Center establishing a secular, humanist and holistic religion which excludes mainstream Judeo-Christian beliefs discriminates against CBAmerica Chaplains, prevents them from practicing their religious

beliefs, have forced them out of the program and will, if not corrected, prevent future

CBAMERICA Chaplains from completing the program and practicing their faith in the health

care facilities serviced by the program.

42.

Defendant's actions herein are an unconstitutional violation of the Free Exercise Clause of

the First Amendment.

**THE  SAN DIEGO VA-DOD CPE CENTER'S INTOLERANCE OF MAINSTREAM JUDEO-CHRISTIAN RELIGIOUS BELIEFS VIOLATES THE FREE SPEECH CLAUSE**

43.

The ability to speak freely is an individual fundamental right.

44.

The ability to speak freely can only be limited in the face of a compelling  governmental

interest and a showing that the government action is narrowly tailored to promote that

compelling interest in the least restrictive way.

45.

Religious speech, including the quotation of scripture, praying in Jesus' name and

advocating the tenets of mainstream Judeo-Christian beliefs in their roles as Chaplains are within

the scope of the protection afforded by the Free Speech Clause to the First Amendment.

46.

The actions of the Secretary within the San Diego VA-DOD CPE Center in limiting the

religious speech of Chaplains endorsed by CBAmerica unfairly discriminates against those

Chaplains and any future CBAmerica Chaplains who may choose to affiliate with the program.

47.

Defendant's actions herein are an unconstitutional violation of the Free Speech Clause of the

First Amendment.

**THE ACTIONS OF THE SAN DIEGO VA-DOD CPE CENTER IN PERSECUTING AND DISCRIMINATING AGAINST CBAMERICA CHAPLAINS WERE ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION AND NOT IN ACCORDANCE WITH LAW AND REGULATIONS  IN VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT**

48.

The Administrative Procedures Act at 5 U.S.C. § 702 authorizes judicial review for a legal

wrong because of agency action within the meaning of a relevant statute.

49.

The Department of Veterans Affairs and the San Diego VA-DOD CPE Center are agencies

within the scope of 5 U.S.C. § 551(1).

50.

Pursuant to 5 U.S.C. § 706, a federal district court is empowered to compel agency action

unlawfully withheld or unreasonably delayed; and to hold unlawful and set aside agency action,

findings, and conclusions found to be arbitrary and capricious, contrary to the Constitution, law

or regulation of the United States, *ultra vires*, without observance of procedure required by law,

unsupported by substantial evidence and unwarranted by the facts.

51.

The San Diego VA-DOD CPE Center is accredited by the Association for Clinical Pastoral

Education (ACPE).

52.

ACPE is recognized as an accrediting organization by the United States Department of

Education.

53.

The ACPE Standards have been adopted by the San Diego VA-DOD CPE Center in their

Clinical Pastoral Education Handbook.

54.

ACPE Standard 101.1 requires ACPE members to affirm and respect the human dignity and

individual worth of each person.

55.

The San Diego VA-DOD CPE Center violated Standard 101.1 in regards to Chaplain Firtko

and Chaplain Klender by criticizing their quotation of scriptures, their method of prayer in

Jesus' name and criticizing their Baptist core beliefs, which are embraced by their endorser,

plaintiff CBAmerica.

56.

ACPE Standard 101.2 prohibits ACPE members from discriminating against anyone because

of race, gender, age, faith group, national origin, sexual orientation or disability.

57.

The San Diego VA-DOD CPE Center repeatedly violated Standard 101.2 by discriminating

against Chaplain Firtko and Chaplain Klender based on their faith group, specifically their

mainstream Judeo-Christian beliefs.

58.

ACPE Standard 101.4 requires ACPE members to approach the religious convictions of a

person, group and/or CPE student with respect and sensitivity and to avoid the imposition of

their theology or cultural values on those served or supervised.

59.

San Diego VA-DOD CPE Center repeatedly violated Standard 101.4 by disrespecting and

speaking condescendingly toward Chaplain Firtko and Chaplain Klender's in regard to their core

religious beliefs, which represent the mainstream Judeo-Christian beliefs and are embraced by

their endorser, plaintiff CBAmerica.

60.

ACPE Standard 101.5 requires ACPE members to respect confidentiality to the extent

permitted by law, regulations or other applicable rules.

61.

San Diego VA-DOD CPE Center violated Standard 101.5 by informing Chaplain Klender

that another Chaplain had expressed doubts concerning Chaplain Klender's suitability for

his next assignment.

62.

San Diego VA-DOD CPE Center's violations of ACPE standards 101.1, 101.2, 101.4 and

violation of 101.5 were arbitrary and capricious, an abuse of discretion and in violation of the

ACPE regulations adopted by the Department of Veterans Affairs.

63.

San Diego VA-DOD CPE Center religious persecution of CBAmerica's Chaplains was both

arbitrary and capricious.

64.

Chaplain Firtko's termination by the San Diego VA-DOD CPE Center was unsupported by substantial evidence.

65.

San Diego VA-DOD CPE Center religious persecution of CBAmerica's Chaplains was in violation of the Constitution and laws of the United States.

**DECLARATORY JUDGMENT**

66.

The Declaratory Judgment Act, 28 U.S.C. § 2201 empowers a federal district court, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

67.

This court should declare that the defendant's actions are a violation of RFRA.

68.

This court should declare that the defendant's actions are a violation of the Free Exercise Clause of the First Amendment to the Constitution of the United States.

69.

This court should declare that the actions of defendant against Chaplain Firtko are unsupported by substantial evidence.

70.

This court should declare that the actions of defendant are arbitrary and capricious.

71.

This court should declare that the actions of defendant are irrational and constitute material error.

72.

This court should declare that the actions of defendant are unwarranted by the facts.

73.

This court should declare that the actions of defendant are in violation of the Free Speech Clause of the First Amendment to the Constitution of the United States.

74.

This court should further declare that defendant is in violation of the ACPE Standards 101.1, 101.2, 101.4 and in the case of Chaplain Klender 101.5.

## <u>REQUEST FOR INJUNCTIVE RELIEF</u>

75.

Unless defendant is permanently enjoined from discriminating against Chaplains endorsed by CBAmerica, plaintiff can expect continued negative personnel actions, reprisal and harassment, administrative action and religious persecutions against Chaplains endorsed by CBAmerica who may participate in future programs at the San Diego VA-DOD CPE Center.

76.

No harm will result to any interested party or to the public good by prohibiting further discrimination.

77.

Plaintiff has  exhausted any existing administrative remedies or in the alternative, any such remedies would be futile.

78.

Plaintiff will suffer irreparable harm if the discrimination continues.  This includes the denial of the right to place CBAmerica endorsed Chaplains in this program.

79.

Plaintiff seeks a permanent injunction pursuant to the provisions of 5 U.S.C. § 701 et seq., and other federal laws and regulations to protect Plaintiff's endorsed Chaplains from discrimination and persecution.

80.

Plaintiff does not have an adequate remedy at law, in that only an injunction will prevent the illegal discrimination and persecution of Chaplains endorsed by CBAmerica who may participate in future programs at the San Diego VA-DOD CPE Center.

81.

Unless defendant is permanently enjoined from the illegal discrimination and persecution of Chaplains endorsed by CBAmerica who may wish to participate in future programs at the San Diego VA-DOD CPE Center, plaintiff will suffer irreparable harm.  Chaplains endorsed by CBAmerica will be forced to forego their mainstream Judeo-Christian beliefs or be denied an opportunity to complete the San Diego VA-DOD CPE Center's Program.

WHEREFORE, Plaintiff prays that:

1.      The court issue a preliminary and permanent injunction against the defendant, his agents, employees, and successors in office, and/or anyone acting for or in concert with any of them, from discriminating or reprising against CBAmerica endorsed Chaplains at the San Diego VA-DOD CPE Center or anywhere else within the VA healthcare system on the basis of religious beliefs;

2.    CBAmerica Chaplain Firtko be reinstated to the  San Diego VA-DOD CPE Center 's program with any costs of the original transfer and reinstatement assessed against defendant;

3.    CBAmerica Chaplain Klender be reinstated to the  San Diego VA-DOD CPE Center's program with any costs of the original transfer and reinstatement assessed against defendant;

4    The court issue a judgment declaring the discriminatory actions taken against plaintiff were unwarranted by the facts and in violation of the Constitution and laws of the United States and regulations delineated herein which were properly issued pursuant to law;

5.    The court find that defendant abused his discretion and acted arbitrarily and capriciously in their actions against plaintiff;

6.    The court find that defendant's actions taken against CBAmerica endorsed Chaplain Firtko were unsupported by substantial evidence;

7.    The court waive bond or in the alternative set a zero bond for this action;

8.    The court award costs of this action to the plaintiff;

9.    The court award attorneys fees in this action to the plaintiff pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d);

10.    Such other relief as the court deems proper including but not limited to any relief available pursuant to 28 U.S.C. § 2202.

Respectfully Submitted,

MILITARY VETERANS ADVOCACY, INC.
//s// John B. Wells
John B. Wells
DC Bar #450165
P. O. Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd., Suite 201D
Slidell, LA 70458 (physical)
985-641-1855
985-649-1536 (fax)
JohnLawEsq@msn.com

Service will be made per Rule 4i