**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONSERVATIVE BAPTIST<br>ASSOCIATION OF AMERICA, INC.,<br><br>    **Plaintiff,**<br><br>      v.<br><br>ERIC K. SHINSEKI, in his official capacity<br>as Secretary of the U.S. Department of<br>Veterans Affairs,<br><br>    **Defendant.** | **Civil Action No. 13-1762 (JDB)** |

## MEMORANDUM OPINION

Plaintiff Conservative Baptist Association of America, Inc. ("CBAA") brings this action against defendant Eric K. Shinseki, in his official capacity as Secretary of the U.S. Department of Veterans Affairs ("VA"). CBAA asserts claims under the Religious Freedom Restoration Act, the First Amendment, and the Administrative Procedure Act. Presently before the Court is [8] VA's motion to dismiss for lack of standing and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. Upon consideration of VA's motion and the parties' memoranda,[1] the applicable law, and the entire record, and for the reasons set forth below, the Court will grant VA's motion to dismiss.

## BACKGROUND

To obtain a full-time chaplain's position with VA, a military chaplain must complete a training course called the Clinical Pastoral Education ("CPE") program. Am. Compl. [ECF No. 6] ¶¶ 7, 33. Chaplains eligible to participate in the CPE program must be endorsed by an

---

[1] Def.'s Mot. to Dismiss [ECF No. 8] ("Def.'s Mot."); Pl.'s Opp'n to Def.'s Mot. [ECF No. 10] ("Pl.'s Opp'n"); Def.'s Reply to Pl.'s Opp'n [ECF No. 12] ("Def.'s Reply").

accredited organization. Decl. of Michael Pollitt [ECF No. 8-1] ("Pollitt Decl.") ¶ 4; Ex. B to Pollitt Decl. (VA Handbook 5005, Part II, Appx. F1). CBAA is a non-profit corporation that is accredited to endorse chaplains for the CPE program. Am. Compl. ¶ 1. CBAA alleges that, over the course of 2012 and 2013, a CPE supervisor, Nancy Dietsch, "verbally harass[ed]" two CBAA-endorsed chaplains, Dan Klender and Steve Firtko. Id. ¶¶ 1, 38. For example, CBAA alleges that Dietsch stated that she and VA "do not allow Chaplains to pray 'in Jesus' name' in public ceremonies"; that Dietsch told Firtko that he could not quote scripture in class; that Dietsch "impugned [Klender's] core faith beliefs stating they would not work in a clinical setting"; and that Dietsch told Firtko that "'if you believe your beliefs are right, and everyone else's [are] wrong, you do not belong in this program.'" Id. ¶¶ 12-23. After several confrontations with Dietsch, Firtko was placed on a six-week probationary period away from the CPE program on February 8, 2013. Id. ¶ 28. He was then dismissed from the CPE program effective March 1, 2013, via a letter from Dietsch stating that the "probation period is not yielding the results we both desire." Id. ¶ 30. Klender withdrew from the CPE program on February 8, 2013—the same day Firtko was placed on probation. Id. ¶ 29. CBAA alleges that Klender's withdrawal from the CPE program was a "constructive discharge . . . brought about solely because of Ms. Dietsch's successful persecution" of Klender and Firtko. Id.

Several months later, on July 19, 2013, Firtko and CBAA filed a "formal complaint" against Dietsch for religious discrimination and violations of the Association of Pastoral Continuing Education Standards. Id. ¶ 31. That same day, Klender and CBAA filed a similar complaint against Dietsch. Id. ¶ 32. CBAA's amended complaint before this Court does not allege where these "formal complaints" were filed—so it is unclear who or what entity would have received them. CBAA's amended complaint also does not allege what happened after these

"formal complaints" were filed. In its opposition to VA's motion to dismiss, however, CBAA states that "[n]o response was ever received" to the July 19, 2013 complaints. Pl.'s Opp'n at 7. CBAA also states that, in addition to filing the "formal complaints" on July 19, 2013, it independently sent a letter to VA demanding that VA "cease and desist from the harassment of [CBAA-endorsed chaplains] and return both Chaplains Firtko and Klender to the [CPE] program." Id; Ex. 3 to Pl.'s Opp'n [ECF No. 10-3] (July 19, 2013 Letter from CBAA to VA). VA responded that it had "reviewed this matter" and was "confident the VA San Diego Healthcare System acted appropriately." Pl.'s Opp'n at 7; Ex. 4 to Pl.'s Opp'n [ECF No. 10-4] (Oct. 15, 2013 Letter from VA to CBAA).

Subsequently, CBAA—but not Firtko or Klender—brought this lawsuit against VA. In addition to other requested relief, CBAA requests that Firtko and Klender be reinstated to the CPE program. Am. Compl., Prayer for Relief ¶¶ 2-3. VA has now moved to dismiss, arguing that CBAA lacks standing to bring this suit and that CBAA fails to state a cause of action. See Def.'s Mot. at 5.

## LEGAL STANDARDS

On a motion to dismiss for lack of jurisdiction or for failure to state a cause of action, "the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Factual allegations must be presumed true, and the plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). The Court need not, however, accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986); accord Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006). "[W]here necessary, the court may

consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

Rule 12(b)(1) provides for the dismissal of an action for lack of subject-matter jurisdiction. The Court may look beyond the allegations in the complaint to resolve a Rule 12(b)(1) motion to dismiss. Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987). Although the Court must construe the complaint liberally, a plaintiff bears the burden of establishing the elements of jurisdiction, including standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). "[S]tanding 'is an essential and unchanging' predicate to any exercise of [the court's] jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (quoting Lujan, 504 U.S. at 560). "The irreducible constitutional minimum of standing contains three elements: (1) injury-in-fact, (2) causation, and (3) redressability." Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp., 564 F.3d 462, 464 (D.C. Cir. 2009) (internal citation and quotation marks omitted). Hence, to establish standing, a plaintiff "'must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). Notably, where "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." Lujan, 504 U.S. at 562 (quoting Allen, 468 U.S. at 758).

When the plaintiff is an organization—rather than an individual—it can assert standing in two capacities. See Am. Legal Found. v. FCC, 808 F.2d 84, 89 (D.C. Cir. 1987). First, it may sue on behalf of itself as an institution. Id. In this capacity, "the organization's pleadings must

survive the same standing analysis as that applied to individuals." Id. (citing Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79 (1982)). "Second, even if an organization itself has suffered no 'injury in fact,' the organization may nonetheless sue in certain circumstances on behalf of its members." Id. (citing Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 342 (1977)). To establish this type of standing—known as associational standing—the organization must show that at least one of its members has standing to sue in his own right. See Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002)

## DISCUSSION

VA argues that CBAA lacks standing to bring this suit either on its own behalf or on behalf of its members. VA also argues that CBAA fails to state a claim. Because the Court agrees that CBAA lacks standing, the Court will grant VA's motion to dismiss on that basis and will not reach VA's failure-to-state-a-claim argument.

I. **CBAA LACKS STANDING ON ITS OWN BEHALF BECAUSE IT HAS NOT SUFFERED AN INJURY-IN-FACT.**

"An organizational plaintiff . . . may have standing to sue on its own behalf 'to vindicate whatever rights and immunities the association itself may enjoy . . . .'" Common Cause v. Fed. Election Comm'n, 108 F.3d 413, 417 (D.C. Cir. 1997) (quoting Warth v. Seldin, 422 U.S. 490, 511 (1975)). To establish standing, the organization must allege "such a 'personal stake' in the outcome of the controversy as to warrant the invocation of federal-court jurisdiction," and thus must meet the standing requirements applicable to individuals: (1) injury-in-fact, (2) causation, and (3) redressability. Nat'l Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (quoting Havens Realty, 455 U.S. at 378-79). To satisfy the first requirement—an injury-in-fact—the organization must show "concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources—

5

constitut[ing] . . . more than simply a setback to the organization's abstract social interests." Id. at 1433 (quoting Havens Realty, 455 U.S. at 379); accord Nat'l Ass'n of Home Builders v. EPA, 667 F.3d 6, 11 (D.C. Cir. 2011). "Such a showing requires . . . [that] '[t]he organization [] allege that discrete programmatic concerns are being directly and adversely affected' by the challenged action." Nat'l Taxpayers Union, 68 F.3d at 1433 (quoting Am. Legal Found., 808 F.2d at 92). This CBAA has not done.

A line of cases beginning with Havens Realty illustrates the relevant standing rule. In Havens Realty, the Supreme Court found an injury-in-fact where a plaintiff organization, whose purpose was "to make equal opportunity housing a reality," alleged that the defendant's racial-steering practices, which "preserve[d] and encourage[d] patterns of racial segregation in available housing," had "frustrated the [plaintiff] organization's counseling and referral services, with a consequent drain on resources." 455 U.S. at 367-69. The Court found that the plaintiff suffered an injury-in-fact because defendant's actions "perceptibly impaired" the plaintiff's core activities, which caused a drain on the plaintiff's resources. Id. at 379.

The D.C. Circuit has applied the reasoning of Havens Realty to a wide variety of cases. See, e.g., Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129, 132-33 (D.C. Cir. 2006) (finding an injury-in-fact where plaintiff organization alleged that it had to divert significant time and resources from its core activities—which included assisting its members and the public in accessing potentially life-saving drugs, counseling, advocacy, and educational services—in order to help its members and the public address new FDA requirements); Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp, 28 F.3d 1268, 1276-77 (D.C. Cir. 1994) (finding an injury-in-fact where plaintiff organization had "broad goal of promoting equal opportunity" and defendant's discriminatory actions interfered with

plaintiff's "community outreach and public education, counseling and research projects" and "required the [plaintiff] to expend resources to counteract [defendant's] alleged discrimination"); Spann v. Colonial Vill., Inc., 899 F.2d 24, 26-29 (D.C. Cir. 1990) (finding an injury-in-fact where two plaintiff organizations "dedicated to ensuring equality of housing opportunity through education and other efforts" sued an advertising agency and a developer for allegedly publishing discriminatory housing advertisements, which required plaintiffs to "devote scarce resources" to counteract defendant's advertising). These cases demonstrate that for a plaintiff organization to suffer an injury-in-fact, there are two requirements. First, "a direct conflict between the defendants' conduct and the organization's mission is necessary." Nat'l Treas. Emps. Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996). In contrast, there is no injury-in-fact where "a defendant's conduct does not conflict directly with an organization's stated goals, [because] it is entirely speculative whether the defendant's conduct is impeding the organization's activities." Id. (finding that a mere effect on an organization's lobbying efforts, absent direct conflict with the organization's mission, was insufficient to establish an injury-in-fact); see also Havens, 455 U.S. at 379 (distinguishing injury to an "organization's activities" from "a setback to the organization's abstract social interests"); Abigail Alliance, 469 F.3d at 133 (explaining that the D.C. Circuit has "distinguished between organizations that allege that their activities have been impeded from those that merely allege that their mission has been compromised").

Second, the plaintiff organization must show a "consequent drain on the organization's resources," resulting from this direct conflict. Havens, 455 U.S. at 379; accord Nat'l Taxpayers Union, 68 F.3d at 1433. Importantly, however, "an organization may not 'manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit.'" ASPCA v. Feld, 659 F.3d 13, 25 (D.C. Cir. 2011) (quoting Spann, 899 F.2d at 27). "An organization's

7

diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing." Id. (citing Equal Rights Ctr. v. Post Properties, Inc., 633 F.3d 1136, 1139-40 (D.C. Cir. 2011)).

Here, CBAA failed to allege in its amended complaint that it suffered any injury. Rather, it alleged injury only to Firtko and Klender, who are not parties. In response to VA's motion to dismiss, however, CBAA now claims that VA's alleged actions have caused injury to CBAA as an organization. As an exhibit to its opposition, CBAA submitted a copy of the "Constitution" of CBAA,[2] which provides that the mission or "purpose" of CBAA is as follows:

> For the glory of God[,] CBA[A] exists to serve, resource, and represent our member Regions. [CBAA] shall collect and disburse funds, disseminate information, solicit and receive gifts direct or in trust, act as trustee for any such trusts, and acquire and own property—real or personal—as necessary or convenient.

Ex. 1 to Pl.'s Opp'n [ECF No. 10-1] (CBAA Constitution) at 2. Even though its Constitution does not explicitly mention it, CBAA contends that "[a]mong [its] missions, [CBAA] acts as [an] endorsing agent[] for Chaplains." Am. Compl. ¶ 1; see also Pl.'s Opp'n at 14. And CBAA further contends that VA's alleged actions have caused an injury to this mission. Pl.'s Opp'n at 9-10. Specifically, CBAA claims that VA's "termination"[3] of CBAA-endorsed Chaplains Klender and Firtko is "more than a mere setback to [CBAA's] interests" and "represents a significant drain on [CBAA's] resources as an organization." Id. CBAA also claims that the "[c]ontinued harassment of [CBAA-endorsed] chaplains and interference with their right to practice the tenets of their faith, may well cause [CBAA] to reconsider whether or not it will continue to endorse chaplains for VA or to participate in further programs as an endorsing agent." Id. at 10.

_____

[2] In resolving a motion to dismiss for lack of standing, the Court may look beyond the allegations in the complaint. See Haase, 835 F.2d at 906.

[3] Klender was not technically "terminated" from the CPE program, but CBAA alleges that he was effectively terminated. See Am. Compl. ¶ 29.

Upon examination, these claims do not suffice to show standing: they neither show "a direct conflict between the defendants' conduct and the organization's mission," Nat'l Treas. Empls. Union, 101 F.3d at 1430, nor a "consequent drain on the organization's resources," Havens, 455 U.S. at 379.  In support of its claim that the alleged termination of Firtko and Klender "represents a significant drain" on its resources, CBAA vaguely asserts that "[e]ndorsed chaplains who are terminated from the CPE program constitute more than a mere setback to [CBAA's] interests," and that "[e]ndorsing a chaplain is a time[-]consuming and resource[-]intensive endeavor.  The endorsing agent is required to verify the personal religious qualifications of each chaplain it endorses to ensure that they meet their own and VA standards." Pl.'s Opp'n at 9-10.  To the extent endorsing chaplains falls within CBAA's mission, CBAA fails to show that the challenged conduct—a single supervisor's allegedly discriminatory conduct toward two chaplains and the chaplains' subsequent terminations—has caused a "concrete and demonstrable injury to [CBAA's] activities . . . constitut[ing] . . . more than simply a setback to the [CBAA's] abstract social interests." Nat'l Taxpayers Union, 68 F.3d at 1433 (quoting Havens Realty, 455 U.S. at 379).[4]  CBAA has not alleged that VA has prevented it from endorsing chaplains; rather, CBAA remains accredited to endorse chaplains as it chooses.  Nor has CBAA alleged that VA has prevented it from continuing to endorse Klender and Firtko in their capacities as chaplains.[5]

Moreover, CBAA has not shown a "consequent drain on the organization's resources." Havens, 455 U.S. at 379.  CBAA fails to allege that it "divert[ed] significant time and resources

---

[4] CBAA does not claim that VA is plagued by systemic discrimination that is affecting a large number of CBAA-endorsed chaplains.  Rather, CBAA claims only that two CBAA-endorsed chaplains were allegedly discriminated against by a single supervisor. See generally Am. Compl.

[5] CBAA appears to continue to endorse Klender and Firtko.  Klender is employed as a chaplain for the Navy, see Am. Compl. ¶ 5, and Firtko is employed as a chaplain in a VA residency program, see Def.'s Reply (citing Pollitt Decl. ¶ 8).

from its core activities" to respond to defendant's alleged actions, <u>Abigail Alliance</u>, 469 F.3d at 132-33, or that it "devote[d] scarce resources to identify and to counteract" defendant's alleged actions, <u>Spann</u>, 899 F.2d at 28. Any resources that CBAA expended on verifying the qualifications of Firtko and Klender were in the normal course of CBAA's operations, and it cannot convert its ordinary activities and expenditures related to endorsing chaplains into an injury-in-fact. <u>See</u> <u>Nat'l Taxpayers Union</u> 68 F.3d at 1434 (finding no injury-in-fact where defendant's alleged actions did not subject plaintiff organization to costs beyond those normally expended in the course of the organization's operation). And any resources used in support of this litigation are "self-inflicted" costs and "cannot qualify as an injury in fact for purposes of standing." <u>ASPCA</u>, 659 F.3d at 25.

CBAA's other claim—that the "[c]ontinued harassment of [CBAA-endorsed] chaplains and interference with their right to practice the tenets of their faith, may well cause [CBAA] to reconsider whether or not it will continue to endorse chaplains for VA or to participate in further programs as an endorsing agent," Pl.'s Opp'n at 10—is also not sufficient to show an injury-in-fact. CBAA's hypothetical future reticence to endorse chaplains for the CPE program or other programs is not an injury recognized under the law. <u>See</u> <u>Clapper v. Amnesty Int'l USA</u>, 133 S. Ct. 1138, 1151 (2013) (explaining the plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). Hence, CBAA's hypothetical and self-inflicted future injury remains speculative and is not sufficient for standing. <u>See</u> <u>id.</u>

Ultimately, CBAA fails to show that it has suffered any cognizable injury. Unlike the injury alleged in <u>Havens Realty</u>, where the defendant's practices "perceptibly impaired" the plaintiff's ability to perform its core activities and caused a consequent drain on the plaintiff's

resources, 455 U.S. at 379, CBAA has not shown that VA's alleged actions, including the termination of Klender and Firtko, have impaired CBAA's mission or forced CBAA to expend any resources in a manner that prevents it from pursuing its core activities or goals. CBAA therefore lacks standing to bring this lawsuit on its own behalf.

## II. CBAA LACKS ASSOCIATIONAL STANDING BECAUSE FIRTKO AND KLENDER ARE NOT MEMBERS OF CBAA.

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members." Warth, 422 U.S. at 511. To establish associational standing, the plaintiff organization must show that: "(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." Sierra Club, 292 F.3d at 898 (citing Hunt, 432 U.S. at 342-43); accord Nuclear Energy Inst., Inc. v. EPA, 373 F.3d 1251, 1265 (D.C. Cir. 2004). Here, CBAA has not carried its burden because it has failed to identify members that were harmed by the alleged actions of VA and hence would have standing in their own right.

"Under the first element of [the associational standing] test, the . . . petitioners must show that at least one of their members meets the 'irreducible constitutional minimum' of standing, i.e., injury-in-fact, causation, and redressability." Nuclear Energy Inst., 373 F.3d at 165 (quoting Lujan, 504 U.S. at 560-61); see also Wilderness Soc'y v. Norton, 434 F.3d 584, 590 (D.C. Cir. 2006) ("In order to establish standing, [the association] must demonstrate, as to each of its claims, that at least one member meets the requirements of Lujan."). To determine whether an individual is a member of an organization, the Court looks to whether that individual possesses the "indicia" of membership, which include electing the leadership of the association, guiding the association's activities, and financing those activities. See Am. Legal Found., 808 F.2d at 91

11

(holding that "media watchdog" organization that purported to act on behalf of television viewers lacked associational standing because the viewers did not select leadership, guide activities, or finance activities); see also Fund Democracy, LLC v. SEC, 278 F.3d 21, 26-27 (D.C. Cir. 2002) (holding that plaintiff organization that purported to act on behalf of an "informal consortium" of mutual fund investors lacked associational standing because it was not steered by its purported members and did not receive funding from such members); Gettman v. DEA, 290 F.3d 430, 435 (D.C. Cir. 2002) (holding that magazine that purported to act on behalf of readers and subscribers lacked associational standing because those readers and subscribers did not select leadership, guide activities, or finance activities).

CBAA's complaint alleges harm only to Firtko and Klender. Hence, to establish associational standing, CBAA must show that Firtko and Klender are members of CBAA and that they have standing in their own right. CBAA fails, however, to show that Firtko and Klender are members. CBAA does not allege that the two chaplains participate in selecting CBAA's leadership or that they play a role in guiding or financing CBAA's activities. Moreover, chaplains are not mentioned anywhere in the membership section of CBAA's Constitution. Pursuant to Article VI, entitled "Membership," members are regional "associations of Conservative Baptist churches," represented by a Regional Executive Director who sits on the Board of Directors, which "conduct[s], manage[s], and direct[s] the business and affairs of" CBAA.[6] CBAA Constitution at 3-4; see also Def.'s Mot. at 10 ("According to the CBAA

---

[6] CBAA has not alleged harm to its member church associations and it has thus conceded that line of argument. See Rainbow/PUSH Coal. v. FCC, 396 F.3d 1235, 1239 (D.C. Cir. 2005) (explaining that, if standing is challenged, a petitioner "'should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding'—either 'in response to a motion to dismiss for want of standing' or, in the absence of such a motion, 'with the petitioner's opening brief'") (quoting Sierra Club, 292 F.3d at 900); see also Common Cause v. Biden, 909 F. Supp. 2d 9, 21 n.6 (D.D.C. 2012) (finding that plaintiffs conceded that they lacked associational standing by failing to identify their members who suffered the alleged harm in response to a motion to dismiss).

12

constitution available on its website, the CBAA is an umbrella organization of regional church associations, not a membership-based organization of individuals.").

Despite the contents of its own Constitution, CBAA broadly claims that, because the chaplains it endorses "are required to be members of the churches that comprise [CBAA]," all endorsed chaplains must therefore qualify as "members" of CBAA. Pl.'s Opp'n at 14. Firtko and Klender's association with the churches that comprise the CBAA, however, is not sufficient evidence that they are "members" of CBAA: they still do not elect the leadership of CBAA, guide its activities, or finance those activities. See Am. Legal Found., 808 F.2d at 91. Accordingly, because Firtko and Klender are not members of CBAA, it lacks associational standing to bring a claim on their behalf.

## CONCLUSION

For the foregoing reasons, VA's motion to dismiss will be granted.[7] A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: May 16, 2014

---

[7] In CBAA's opposition to VA's motion to dismiss, it broadly requests leave to amend its complaint "[t]o the extent that the Court feels that additional pleading is required." Pl.'s Opp'n at 9, 28. This request fails to comply with the law of this Circuit, which requires that a motion for leave to amend a complaint be accompanied by a proposed amended complaint. See Local Civil Rule 15.1 (requiring a motion for leave to amend to include the proposed amended pleading); see also United States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of [the applicable Federal Rule of Civil Procedure,] Rule 15(a)"). CBAA's request fails to include a proposed amended complaint or to indicate the grounds on which an amendment is sought, and therefore will be denied.